## JOHN BUDDY *v.* STEAMER VANLEER et al.

The act of 13th of February, 1816, to take the most effective measures in order to prevent the transportation of slaves, is strictly a penal law; and the same jury who find the accused guilty are to assess the damages to the owner of the slave transported.

By the 1st section of the act of 25th of March, 1840, the taking of a slave, or suffering him to remain, on board of a boat engaged in making voyages, is made a legal presumption of the intention of the officers of the vessel to carry off the slave; but this legal presumption may be rebutted by proper evidence.

APPEAL from the Fourth District Court of New Orleans. *Strawbridge,* J. *Wolfe* and *Abel,* for Plaintiff. *John W. Price,* for defendants. The judgment of the court was pronounced by

PRESTON, J. The plaintiff claims from the master, mate and owners of the *Steamboat Vanleer* thirteen hundred dollars for the value of a slave named *Ned,* and damages caused by his employment on board the steamboat without his permission.

It is sufficiently established, that the mate of the steamboat hired the boy on board the boat on the 14th of March, 1849; that he went with her a trip to Attakapas and back to New Orleans, where she arrived about the 20th of March. The cholera was then prevailing in New Orleans to an extent considered by a witness as epidemical. *Ned,* being at work on the levee, probably still in the service of the boat, took the cholera. He was requested by the clerk of the boat to go home to his master; he went away, but returned in half an hour, and was taken on board, where he had a brother in the employment of the boat. The

brother was sent to let his master know that he was sick on board; no one came from the master until next morning a gentleman, representing himself to be the son of the master, came and took him away in a cab, and he died in his master's house the same day. From the time he was taken on board with the cholera until he was removed much exertion was made to save him, by rubbing him with brandy, cayenne pepper, and by administering Dr. Cannon's anti-cholera preparations: two persons having attended on him all night.

The plaintiff contends that the act of the 13th of February, 1816, "to take the most effective measures in order to prevent the transportation, or carrying away of slaves out of this State, against the will of their owners, and for other purposes," and the amendatory act of the 25th of March, 1840, passed for the purpose " of preventing slaves from being transported or conducted out of the State against the will of their owners," have been violated; and that the master, boat and owners are liable to the penalties, and responsible for the damages prescribed by those acts.

The act of 1816 is strictly a penal law; heavy punishments are inflicted for its violation; and the same jury who find the accused guilty of the offences prohibited are to assess the private damages to the owner of the slave carried away. It has no application to this case, and the facts above stated would not have warranted a conviction under it.

The first section of the act of 1840 prescribes, " That, if in future *any person finds* one or more of his slaves on board of a ship, steamboat or other vessel destined to make voyages out of this State, or from one part of the State to another, and said slave or slaves be on board without the written consent of the owner, the captain, master, and proprietors of said ship, steamboat, or other vessel, whether the said slave have been transported out of the State or from one part thereof to another part, or on the point of being transported, whether the said slaves have been hidden or not on board of the said ship, steamboat, or other vessel, the owners, master and captain of said ship, steamboat, or other vessel shall be presumed to have received said slaves on board of their vessel, or to have hidden them, (or to have suffered them to remain on board) with the intention of depriving their masters of them, and of transporting them out of the State, or from one part of the State to another. And this presumption of the law shall not be destroyed but on the testimony of two witnesses not employed on board of said vessel, and on corroborating circumstances."

Now, *Mr. Mason*, plaintiff's witness, testifies that a boy came to the house of the plaintiff early in the morning, on the 21st of March, and gave information that his slave was very sick on board the boat, leaving no doubt it was the messenger sent by the mate to the owner to come and take him away. The witness went on board and took him away at the request of the mate. The plaintiff himself has thus completely removed the presumption of law that the master or mate had him then on board with the intention of removing him out of the State, or of depriving the owner of his slave by removing him from one part of the State to another. In the case of *Winston* v. *Foster*, the late Supreme Court very properly decided that the presumption of law was removed by the acts of the master of the vessel, which entirely repelled it. 5 R. R. 113. We are led to the same conclusion by the conduct of the officers of the boat in the present case, that they had not the intentions which are essential to the crime.

The second section of this act imposes a fine of five hundred dollars, which is not claimed in this suit, and could only be inflicted after conviction in a criminal prosecution. It also renders the master, owner and boat responsible, *in solido,* for

BUDDY
v.
STEAMER
VANLEER.

the value of the slaves that shall have been taken away from their masters who shall have lost them. This clearly implies that the slave shall have been lost in consequence of having been taken away from the master; as for example, if being taken out of the reach of the police of the parish, or beyond the recognition of those who knew him, he had escaped, or had fallen overboard, or had been sold. so as to be lost to his owner.

The civil action for the value of the slave, given by the amendment, in 1835, of the original act, is based upon the same supposition, that the slave is totally lost by the act or neglect of the officers of the boat. In the case of *Buel* v. *The Steamer New York et al.*, cited by plaintiff's counsel, the slave was lost to his owner in consequence of being carried out of the State by the steamboat. This is not only the manifest interpretation of the decision, but the court which rendered it so declared in commenting upon it, in the subsequent case of *Winston* v. *Foster*, 5 R. R. 113. In all cases, where a slave should be lost clearly in consequence of a violation of the law, the master and owners would be responsible for his value.

But in this case, it is clearly proved that the slave was lost by cholera, with which he was attacked in the city of New Orleans, the place of the residence of his master. The disease and death had no connection whatever with his employment on the boat, but was probably the consequence of an epidemic then prevailing in New Orleans, to which the slave might have been subject at any other place in the city as well as while working on the levee. The loss of the slave was clearly caused by the will of God, unconnected with the acts of the defendants, and is subject to the maxim, " *Actus Dei nemini facit injuream.*" Whoever is blessed with property must bear the loss to which it may please Providence to subject it, and it must not be imposed upon those who do not own the property or cause the loss.

The plaintiff is entitled to recover the damage he has suffered by the loss of the time of his slave, because hired out without his permission, and without due precaution on behalf of the officers of the boat to ascertain that he was a slave, and that they had no right to hire him. His character as a slave may have been injured by their negligence, and other special damages may have resulted directly and immediately from the acts or negligence of the defendants and their agents. Such damages the plaintiff is entitled to recover Counsel fees for prosecuting this suit, as allowed by the district court, are not included in these damages; for there appears to have been neglect but not crime on behalf of the officers of the boat. Neither the record nor evidence shows the damages caused immediately by the defendants. That some occurred, we have no doubt; and, we think, justice requires that the cause should be remanded in order to ascertain them.

The judgment of the district court is reversed, at the costs of the plaintiff; and the cause is remanded for further proceedings, with a recommendation that the pleadings be amended : the costs of the district court to abide the final judgment of the case.